# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

ALLEN DESHAWN FARMER,

                Petitioner,

    v.

STUART J. RYAN, Warden

                Respondent.

_____/

CV F 05-1253 OWW DLB HC

FINDINGS AND RECOMMENDATION
REGARDING PETITION FOR WRIT OF
HABEAS CORPUS

[Doc. 22]

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.[1]

## BACKGROUND

Following a jury trial in the Madera County Superior Court on April 8, 1999, Petitioner was convicted of murder (Cal. Pen. Code[2] § 187(a)) during the course of an attempted robbery (§ 190.2(a)(17)); three counts of attempted robbery (§§ 664/211); personally discharging a firearm as to counts one and two (§ 12022.53(d)) and personal use of a firearm as to counts three and four (§ 12022.53(b)).  Petitioner was sentenced as follows: life imprisonment without the possibility of parole for murder (count one), consecutive to a term of twenty-five years to life for discharging a firearm (enhancement to count one), and a determinate term of twenty years eight

---

[1]  As Respondent submits, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Stuart J. Ryan is substituted for Richard Kirkland as the warden. See also Jones v. Cunningham, 371 U.S. 236, 243-244 (1963); Smith v. Campbell, 450 F.2d 829 (9th Cir. 1971).

[2]  All further statutory references are to the California Penal Code unless otherwise indicated.

1

1   months for counts two through four.  (RT 4/8/99 at 19-21; CT 259-263.)[3]

2         Petitioner filed a timely notice of appeal with the California Court of Appeal, Fifth

3   Appellate District.  (Lodged Doc. No. 1.)

4         On January 27, 2000, Respondent filed its brief in response.  (Lodged Doc. No. 2.)

5         On or about February 15, 2000, Petitioner filed a reply brief.  (Lodged Doc. No. 3.)

6         On or about May 11, 2000, Petitioner filed a petition for writ of habeas corpus with the

7   Fifth District Court of Appeal.  (Lodged Doc. No. 4.)

8         On June 20, 2000, Respondent filed an informal response to the habeas petition.  (Lodged

9   Doc. No. 5.)

10         On or about June 28, 2000, Petitioner filed an informal reply.  (Lodged Doc. No. 6.)

11         On March 30, 2001, the Fifth District Court of Appeal affirmed the judgment in its

12   entirety and denied the habeas corpus petition.  (Lodged Doc. No. 7.)

13         On May 4, 2001, Petitioner filed a petition for review with the California Supreme Court.

14   The petition was denied on July 11, 2001.  (Lodged Doc. No. 8.)

15         On May 9, 2002, Petitioner filed a petition for writ of habeas corpus in the Madera

16   County Superior Court.  The petition was denied on May 28, 2002.  (Lodged Doc. No. 9.)

17         On July 1, 2002, Petitioner filed a petition for writ of habeas corpus in the Fifth District

18   Court of Appeal.  The petition was denied on October 9, 2003.  (Lodged Doc No. 10.)

19         On December 5, 2003, Petitioner filed a petition for writ of habeas corpus in the

20   California Supreme Court.  (Lodged Doc. No. 11.)

21         On December 21, 2004, Respondent filed an informal response to the petition pursuant to

22   the California Supreme Court's request of December 3, 2004.  (Lodged Doc. No. 12.)

23         On January 11, 2005, Petitioner filed an opposition.  (Lodged Doc. No. 13.)

24         On July 27, 2005, the California Supreme Court denied the habeas corpus petition.

25

26      [3] "RT" refers to the Reporter's Transcript on Appeal; "CT" refers to the Clerk's Transcript on Appeal; "Petition" refers to the original petition filed on October 3, 2005; "Amd. Petition" refers to the instant amended

27   petition filed on April 21, 2006.  The Court follows Respondent's guide, and the page references to the Amended Petition are to the page numbers entered in the Court's electronic filing of the Amended Petition as Document 22

28   (e.g., ground one appears of the Amended Petition appears on Page 4 of 12 as the document was entered in the court's electronic filing case management system).

(Lodged Doc. No. 14.)

On October 3, 2005, Petitioner filed the instant federal petition for writ of habeas corpus. (Court Doc. 1.)

On January 3, 2006, the Court directed Respondent to file a response to the petition. (Court Doc. 9.)

On February 17, 2006, and March 1, 2006, Petitioner filed supplemental briefs which appeared to set forth new and additional claims for relief, and the Court construed the documents as attempting to amend the original petition.  (Court Docs. 10, 11.)

On March 14, 2006, the Court issued an order vacating the January 3, 2006, order to respond; however, the order was inadvertently not served on Respondent and an answer was filed on March 29, 2006. (Court Docs. 12, 13.)

On April 21, 2006, Petitioner filed an amended petition.  (Court Doc. 22.)  By orders of May 3, 2006, and May 8, 2006, the Court struck Respondent's answer to the original petition, and ordered Respondent to file a motion to dismiss within 30 days or an answer within 60 days. (Court Docs. 23, 24.)

Respondent filed an answer to the amended petition on July 7, 2006.  (Court Doc. 28.) Petitioner filed a traverse on September 29, 2006, and Respondent filed a reply on October 16, 2006.  (Court Docs. 35, 39.)

STATEMENT OF FACTS

On April 19, 1998, at approximately 10:00 p.m., Nicolas Jimenez, Carols Chavez, and Angel Macedo were walking to a market a few blocks away from their home in Madera, California.  (RT 39-40.)  On their way, they were approached by two African-American males. One of the males, identified as Petitioner, pulled a gun from his waistband and pointed it at them. (RT 40-41.)  Petitioner and his partner asked the three men for money in Spanish.  (RT 43.)

Petitioner's partner approached Macedo and went through his shirt pockets, then walked back to Petitioner and said something to him.  (RT 42-44.)  As the men were approximately five to six feet from Macedo, Petitioner fired the gun causing Nicolas Jimenez to fall to the ground. (RT 44-45.)  Macedo ran to the market to seek assistance.  (Id.)  Chavez ran away prior to the

3

1   shots being fired.  (RT 45-46, 56.)

2       Madera police officer Juan Villegas responded to the scene of the incident just minutes

3   after the shooting.  (RT 67-68.)  Jimenez was lying on the ground in the intersection with a

4   gunshot wound in his lower back.  (RT 68-69.)  Jimenez was unresponsive and died of the

5   gunshot wound.  (RT 69, 71, 78, 192-193.)

6       Officer Villegas spoke with Carlos Chavez at the scene of the incident.  Chavez told

7   Villegas that he, Jimenez, and Macedo were walking north on Lake street when they were

8   confronted by two black males.  One produced a gun and both men asked the three of them for

9   money.  (RT 74-75.)  Chavez stated that one of his friends told the men that he worked for his

10  money and they should do the same.  At that point, Chavez ran away to summon help.  (RT 75.)

11  Officer Villegas subsequently interviewed Angel Macedo.  (RT 76.)  Macedo told officer

12  Villegas that he was running away from the scene when the shooting occurred.  He also told

13  officer Villegas that he was not able to give a good description of the assailants.  (RT 85.)

14  Macedo was excited and stressed during the interview and had trouble focusing on the questions

15  and providing answers.  (RT 87.)

16      Officer Villegas testified that the intersection where the shooting took place was well-lit

17  by a street lamp.  He stated that he would be able to identify a person standing four to five feet

18  from him.  (RT 78-79.)

19      On April 21, 1998, two days after the incident, Madera Police Detective Eddie Guzman

20  received an anonymous telephone call regarding the homicide of Jimenez.  (RT 118.)  Detective

21  Guzman also received confidential information from the sheriff's office and from a confidential

22  informant to the task force.  (RT 119, 123.)  Based on this information, Petitioner's eleven-year-

23  old sister, Courtney Ferretti, was interviewed at her school on April 29, 1998.  (RT 123.)

24      Detective Guzman interviewed Courtney Ferretti for approximately twenty minutes.  He

25  then went to her home to speak with her mother, Vikki Robertson.  (RT 127.)  Guzman disclosed

26  the nature of his investigation and told Ms. Robertson that he had just spoke with her daughter at

27  school.  (RT 128-129.)  Robertson told Guzman that she was aware of the robbery and homicide.

28  She told Guzman that her son, Petitioner, had come home the night of the robbery and was

4

vomiting and had diarrhea.  Petitioner told her that he was involved in a robbery with his friend

Ikoy, and Ikoy had shot a man.  Ms. Robertson asked Petitioner why he did that when he had just

received money for his birthday.  (RT 129-131.)  Petitioner stated, "I don't know."  (RT 130.)

Petitioner's father picked him up from Ms. Robertson's residence and took him to Fresno.  Ms.

Robertson was cooperative during the interview and said she would have her son contact the

detective.  (RT 131-132.)  The following day, Robertson called Detective Guzman and indicated

that although she did not condone what her son did, she would not testify against him and would

deny everything she had previously told him.  (RT 132-133.)

Petitioner's sister, Courtney Ferretti, indicated that people were telling her mother that

Petitioner was involved in the robbery.  (RT 162.)  Ferretti acknowledged that she had told

Detective Guzman she knew something about the robbery and shooting, but she could not

remember what she told him during the interview.  (RT 167.)  She did remember telling Guzman

that her mother told her that Petitioner had been involved in a robbery and someone was shot.

(RT 172.)  The taped interview between Detective Guzman and Ferretti was played for the jury.

(RT 176.)

Prior to the interview of Ferretti, Detective Guzman showed Macedo a photographic

lineup and he was able to identify Petitioner as the assailant with the gun.  (RT 125-126.)

Before showing the photographs to Macedo, Guzman admonished him that the subject may or

may not be among the photographs.  He further told him that if he did not recognize anyone he

should not pick any of them and he was under no obligation to identify anybody.  (RT 125.)  He

also identified Petitioner at the preliminary hearing.  (RT 48-50.)  Macedo was certain that

Petitioner was the individual who shot Jimenez.  (RT 51.)  However, Macedo was not able to

identify the other robber from the photographic lineup.  (RT 123-124.)

Defense Evidence

Petitioner's father, Ira Farmer, testified that on April 19, 1998, Petitioner left Madera with

him for his home in Fresno.  He picked Petitioner up from his mother, Vikki Robertson's home

at about 9:25 p.m.  (RT 195, 197.)  They drove together to Fresno and stopped at a convenience

store on the way there.  (RT 202-203.)  Ira Farmer did not tell the police that they stopped on the

way home.  (Id.)  He also did not tell police that Petitioner had stayed at his home that night.  (RT 210.)

Petitioner's girlfriend, Tanesha Randolph, said that Petitioner was with her at 10:00 p.m. on April 19th.  Petitioner had stayed with her that night, and she indicated that he did not have his hair braided on that day.  (RT 212.)

Rebuttal

Detective Guzman testified that as he was leaving the jail one day in August or September he ran into Petitioner's girlfriend, Tanesha Randolph, after interviewing Petitioner. She introduced herself as Petitioner's girlfriend and told him that Petitioner "hadn't done what we said he had done."  She told him that Petitioner was with her that evening or she knew where he was.  She never called the police or district attorney's officer to disclose this information.  (RT 229-230.)

DISCUSSION

A.    Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375, 120 S.Ct. 1495, 1504, n.7 (2000).  Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution.  The challenged conviction arises out of the Madera County Superior Court, which is located within the jurisdiction of this Court. 28 U.S.C. § 2254(a); 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment.  Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059, 2063 (1997; Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), cert. denied, 522 U.S. 1008, 118 S.Ct. 586 (1997) (quoting Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), cert. denied, 520 U.S. 1107, 117 S.Ct. 1114 (1997), overruled on other grounds by Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059 (1997) (holding AEDPA only applicable to cases filed after statute's enactment).  The instant

1  petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

2  B.    Standard of Review

3        This Court may entertain a petition for writ of habeas corpus "in behalf of a person in

4  custody pursuant to the judgment of a State court only on the ground that he is in custody in

5  violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

6        The AEDPA altered the standard of review that a federal habeas court must apply with

7  respect to a state prisoner's claim that was adjudicated on the merits in state court. Williams v.

8  Taylor, 120 S.Ct. 1495, 1518-23 (2000).  Under the AEDPA, an application for habeas corpus

9  will not be granted unless the adjudication of the claim "resulted in a decision that was contrary

10 to, or involved an unreasonable application of, clearly established Federal law, as determined by

11 the Supreme Court of the United States;" or "resulted in a decision that was based on an

12 unreasonable determination of the facts in light of the evidence presented in the State Court

13 proceeding." 28 U.S.C. § 2254(d); Lockyer v. Andrade,123 S.Ct.1166 (2003) (disapproving of

14 the Ninth Circuit's approach in Van Tran v. Lindsey, 212 F.3d 1143 (9th Cir. 2000)); Williams v.

15 Taylor, 120 S.Ct. 1495, 1523 (2000).  "A federal habeas court may not issue the writ simply

16 because that court concludes in its independent judgment that the relevant state-court decision

17 applied clearly established federal law erroneously or incorrectly."  Lockyer, at 1175 (citations

18 omitted).  "Rather, that application must be objectively unreasonable."  Id. (citations omitted).

19       While habeas corpus relief is an important instrument to assure that individuals are

20 constitutionally protected, Barefoot v. Estelle, 463 U.S. 880, 887, 103 S.Ct. 3383, 3391-3392

21 (1983); Harris v. Nelson, 394 U.S. 286, 290, 89 S.Ct. 1082, 1086 (1969), direct review of a

22 criminal conviction is the primary method for a petitioner to challenge that conviction.  Brecht v.

23 Abrahamson, 507 U.S. 619, 633, 113 S.Ct. 1710, 1719 (1993).  In addition, the state court's

24 factual determinations must be presumed correct, and the federal court must accept all factual

25 findings made by the state court unless the petitioner can rebut "the presumption of correctness

26 by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); Purkett v. Elem, 514 U.S. 765, 115

27 S.Ct. 1769 (1995); Thompson v. Keohane, 516 U.S. 99, 116 S.Ct. 457 (1995); Langford v. Day,

28 110 F.3d 1380, 1388 (9th Cir. 1997).

C.   Ineffective Assistance Counsel - Failure to Introduce Gun Evidence

Petitioner contends that trial counsel was ineffective for failing "to request the discovery of the gun known to the prosecutor" which was allegedly found on a Hispanic male.  (Amd. Petition, at 4.)

Petitioner presented this claim to the California Supreme Court by way of a petition for writ of habeas corpus.  (Lodged Doc. No. 11, at 57-59.)  The claim is exhausted and timely because it was presented as ground two of the original timely petition filed in the Court on October 3, 2005.  (Petition, at 5.)  The California Supreme Court denied the petition without citations or comment.  (Lodged Doc. No. 14.)  The court looks to the last reasoned state court decision as to the basis for the state court judgment.  Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002) (citing Ylst v. Nunnemaker, 501 U.S. 797, 803-04 (1991)).  Where, as here, the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under section 2254(d).  Delgado v.  Lewis, 223 F.3d 976, 982 (9th Cir. 2000).

The law governing ineffective assistance of counsel claims is clearly established for the purposes of the AEDPA deference standard set forth in 28 U.S.C. § 2254(d).  Canales v. Roe, 151 F.3d 1226, 1229 (9th Cir. 1998.)  In a petition for writ of habeas corpus alleging ineffective assistance of counsel, the court must consider two factors.  Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064 (1984); Lowry v. Lewis, 21 F.3d 344, 346 (9th Cir. 1994).  First, the petitioner must show that counsel's performance was deficient, requiring a showing that counsel made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment.  Strickland, 466 U.S. at 687.  The petitioner must show that counsel's representation fell below an objective standard of reasonableness, and must identify counsel's alleged acts or omissions that were not the result of reasonable professional judgment considering the circumstances.  Id. at 688; United States v. Quintero-Barraza, 78 F.3d 1344, 1348 (9th Cir. 1995).  Judicial scrutiny of counsel's performance is highly deferential.  A court indulges a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.  Strickland, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064 (1984); Sanders v.

1  Ratelle, 21 F.3d 1446, 1456 (9th Cir.1994).

2      Second, the petitioner must show that counsel's errors were so egregious as to deprive

3  defendant of a fair trial, one whose result is reliable.  Strickland, 466 U.S. at 688.  The court must

4  also evaluate whether the entire trial was fundamentally unfair or unreliable because of counsel's

5  ineffectiveness.  Id.; Quintero-Barraza, 78 F.3d at 1345; United States v. Palomba, 31 F.3d 1356,

6  1461 (9th Cir. 1994).  More precisely, petitioner must show that (1) his attorney's performance

7  was unreasonable under prevailing professional norms, and, unless prejudice is presumed, that

8  (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result would

9  have been different.

10     A court need not determine whether counsel's performance was deficient before

11  examining the prejudice suffered by the petitioner as a result of the alleged deficiencies.

12  Strickland, 466 U.S. 668, 697, 104 S.Ct. 2052, 2074 (1984).  Since it is necessary to prove

13  prejudice, any deficiency that does not result in prejudice must necessarily fail.

14     Ineffective assistance of counsel claims are analyzed under the "unreasonable

15  application" prong of Williams v. Taylor, 529 U.S. 362 (2000).  Weighall v. Middle, 215 F.3d

16  1058, 1062 (2000).

17     In the state petition raising the instant claim, Petitioner argued he was denied the right to

18  effective assistance when trial counsel "failed to request the discovery of the gun known to the

19  prosecutor." (Lodged Doc. No. 11, at 57.)  Petitioner stated that trial counsel informed him the

20  gun had been discovered on "another person of Mexican decent [sic]."  However, counsel stated

21  that the gun should not be introduced as it would only strengthen the prosecutor's case and be

22  harmful to Petitioner.  (Id. at 58-59.)  Petitioner claimed counsel's decision rendered ineffective

23  assistance.  (Id. at 59.)

24     Petitioner has failed to carry his burden of proof under Strickland.  Petitioner has not

25  demonstrated that trial counsel was ineffective for failing to obtain "discovery" and failing to use

26  the gun as evidence in Petitioner's trial.  (Amd. Petition, at 4.)  Counsel's opinion was that the

27  gun would harm, rather than help Petitioner' case.  (Lodged Doc. No. 11, at 59.)  Based on a

28  review of the record, counsel's opinion appears reasonable.  As submitted by Respondent, if the

1   evidence established that the gun was the murder weapon, introducing it at Petitioner's trial

2   would have been very damaging.  This would have enabled witness Macedo to testify that the

3   gun resembled the gun Petitioner used on the night of the murder and attempted robbery, which

4   would have been fatal to Petitioner's case.  The risk of presenting such damaging evidence

5   outweighed any benefit from telling the jury the weapon was found on a "person of Mexican

6   descent," considering that crime weapons often exchange hands after the crime occurs.

7   Moreover, there is no doubt that Petitioner's conviction is supported by substantial evidence,

8   including eyewitness testimony and identification and incriminating statements Petitioner made

9   to his mother and sister.  (RT 48-51, 126, 129-131, 162.)  Petitioner has simply failed to

10  demonstrate that counsel was ineffective or that he was prejudiced thereby, and his claim fails.

11  Strickland, 466 U.S. at 692-694.

12  D.      Prosecutorial Misconduct - Improper Closing Argument

13          Petitioner contends that the prosecutor presented improper closing argument in violation

14  of his right to due process.  (Amd. Petition, at 5.)  Respondent argues that the instant claim is

15  time-barred as it was not presented within the one-year statute of limitations.  28 U.S.C. §

16  2244(d).  Respondent's argument has merit.

17          The AEDPA imposes a one year period of limitation on petitioners seeking to file a

18  federal petition for writ of  habeas corpus. 28 U.S.C. § 2244(d)(1).  As amended, Section 2244,

19  subdivision (d) reads:

20          (1)  A 1-year period of limitation shall apply to an application for a writ of
        habeas corpus by a person in custody pursuant to the judgment of a State court.
21      The limitation period shall run from the latest of –

22              (A) the date on which the judgment became final by the conclusion of
        direct review or the expiration of the time for seeking such review;
23
                (B) the date on which the impediment to filing an application created by
24      State action in violation of the Constitution or laws of the United States is
        removed, if the applicant was prevented from filing by such State action;
25
                (C) the date on which the constitutional right asserted was initially recognized
26      by the Supreme Court, if the right has been newly recognized by the Supreme Court and
        made retroactively applicable to cases on collateral review; or
27
                (D) the date on which the factual predicate of the claim or claims
28      presented could have been discovered through the exercise of due diligence.

1
2

> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

3
4
5

A state conviction becomes final when the ninety (90) day period for seeking review in the United States Supreme Court expired.[4] Barefoot v. Estelle, 463 U.S. 880, 887 (1983); Bowen v. Roe, 188 F.3d 1157, 1159 (9th Cir.1999) (concluding period of "direct review" includes the period within which one can file a petition for a writ of certiorari in the United States Supreme Court); Smith v. Bowersox, 159 F.3d 345, 347 (8th Cir.1998).

6
7
8

Petitioner signed the original timely federal petition for writ of habeas corpus on September 26, 2005, which was filed in the Court on October 3, 2005. Applying the mailbox rule[5] to the petition, 272 days of the one-year statutory period passed when the original petition was filed. The amended petition for writ of habeas corpus was signed on April 15, 2006. For the following reasons, to the extent the amended petition contains new claims, it is untimely because it was mailed after a total of 473 days of untolled statutory time had elapsed.

9
10
11
12
13
14

The limitations period initially ran from October 9, 2001 (date conviction became final) until May 9, 2002 (date first petition was filed), resulting in the expiration of 212 days. After the California Supreme Court denied the state petition for writ of habeas corpus on July 27, 2005, the statute of limitations started to run again on July 28, 2005 through September 26, 2005 (the date the instant petition was filed), and an additional 60 days of the limitations ran. Accordingly, 272 days had elapsed of his one-year statute of limitations period. The amended petition was filed on April 15, 2006. To the extent there are new claims not contained in the original petition, 473 days of untolled time passed since Petitioner's conviction became final.

15
16
17
18
19
20
21
22

Under Rule 15(c), a habeas petition may be amended to add new claims that otherwise would be barred by the statute of limitations in 28 U.S.C. § 2244(d)(1) if they "relate back" to claims in the original petition. Mayle v. Felix, 545 U.S. 644, 662; 125 S.Ct. 2562, 2574 (2005);

23
24
25
26
27
28

---

[4] See Sup. Ct. R. 13(1)

[5] The Ninth Circuit Court of Appeals held in Saffold v. Newland, 250 F.3d 1282, 1288-89 (9th Cir. 2000 amended May 23, 2001) that the "mailbox" rule as provided for in Houston also applies to state and federal petitions with respect to calculating the statute of limitations under the AEDPA.

see also Anthony v. Cambra, 236 F.3d 568, 576-78 (9th Cir. 2000).  To relate back to a claim in a timely petition, the claim in an amended petition must arise from "a common 'core of operative facts' uniting the original and newly asserted claims."  Mayle v. Felix, 545 U.S. at 659; 125 S.Ct. at 2572.  In order for a new claim to relate back to the original claims in an earlier petition, it must "arise from the same core facts as the timely filed claims" and not from "events separate in 'both time and type' from the originally raised episode."  Id. at 657.

In the original petition for writ of habeas corpus, Petitioner raised the following four claims:

> Ground one: "Trial attorney failed to object to the detectives offering testimony regarding interviews, hearsay statements and petitioner's involvement;
>
> Ground two: "T[rial] c[ounsel] did not request the discovery of gun known to prosecution and his performance fell below reasonable objective and acceptable standard rendering his representation ineffective";
>
> Ground three: "Conviction obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defendant"; and
>
> Ground four: "Trial counsel committed error when it permitted the prosecution to present hearsay evidence."

The instant claim of prosecutorial misconduct does not relate back to the original petition because none of claims in the original petition concern facts related to the closing argument by the prosecutor.  Although in original petition under the "gun discovery" ineffective assistance of counsel claim, Petitioner complained vaguely that counsel failed to object to the prosecutor's statements and vouching, such claims were part of his ineffective assistance of counsel claim.  Petitioner did not raise nor did he seek to raise a due process violation in the original petition.  The instant prosecutorial misconduct claim arises from the prosecutor's comments in closing argument.  The four claims in the original petition relate to discovery issues, counsel's ineffectiveness, and evidentiary rulings.  There is simply no claim regarding the prosecutor's closing argument.  As such, the instant claim is separate in both time and type and the amendment is barred by Felix.

E.    Admission of Anonymous Tip Evidence

Petitioner contends that the trial court erred by allowing the prosecutor to present hearsay

1    testimony regarding anonymous informants' information.  (Amd. Petition, at 5.)

2         Petitioner presented this claim to the Fifth District Court of Appeal in his direct appeal

3    and to the California Supreme Court in a petition for writ of habeas corpus.  (Lodged Docs No. 1

4    at 17-21; Lodged Doc. No. 11 at 59-64.)  Therefore, as Respondent concedes this claim is

5    exhausted and is timely as it relates back to a claim presented in his original, timely petition.

6    (Petition, at 6, ground four.)

7         In his brief to the state court, Petitioner claimed his constitutional right to confront

8    witnesses was violated by the admission of the anonymous tip evidence.  (Lodged Doc. No. 1, at

9    20.)  Initially, the Court notes that generally, the admissibility of evidence is a matter of state law,

10   and is not reviewable in a federal habeas corpus proceeding. Estelle, 112 S.Ct. at 477; Middleton

11   v. Cupp, 768 F.2d 1083, 1085 (9th Cir.), cert. denied, 478 U.S. 1021 (1985).  Nevertheless, there

12   can be habeas relief for the admission of prejudicial evidence if the admission was fundamentally

13   unfair and resulted in a denial of due process. Estelle, 112 S.Ct. at 482; Pulley v. Harris, 465 U.S.

14   37, 41, 104 S.Ct. 871, 874 (1984); Walters v. Maas, 45 F.3d 1355, 1357 (9th Cir. 1995); Jeffries

15   v. Blodgett, 5 F.3d 1180, 1192 (9th Cir. 1993), cert. denied, 510 U.S. 1191, 114 S.Ct. 1294

16   (1994); Gordon v. Duran, 895 F.2d 610, 613 (9th Cir.1990).  However, the failure to comply with

17   state rules of evidence alone is neither a necessary nor a sufficient basis for granting federal

18   habeas relief on due process grounds.  Jammal v. Van de Kamp, 926 F.2d 918, 919-920 (9th Cir.

19   1991).  Only if there are no permissible inferences that the jury may draw from the evidence can

20   its admission rise to the level of a due process violation.  Id. at 920.  Intent is a permissible

21   inference that the jury may draw from the evidence of prior bad acts.  See Houston v. Roe, 177

22   F.3d 901, 910 n. 6 (9th Cir. 1999).

23        Even if the claim is cognizable pursuant to § 2254, it is without merit.  The state appellate

24   court rejected this claim on the merits.  In ruling, the appellate court found that although the

25   evidence was not admissible for the truth of the matter, it was nonetheless admissible for a

26   nonhearsay purpose, i.e. to explain why Detective Guzman focused his investigation on

27   Petitioner.  (Lodged Doc. No. 1, at 27.)  The jury was properly admonished of such ruling.  (RT

28   118-121.)  Furthermore, the fact that the evidence came from an anonymous source did not

1   preclude the detective from discussing it because of its nonhearsay purpose. (Id. at 27-28.) The

2   appellate court concluded that even if the trial court erred in admitting such evidence, any such

3   error was harmless beyond a reasonable doubt. (Id. at 31.) The state courts' determination of

4   this issue was not contrary to, or an unreasonable application of, clearly established Supreme

5   Court precedent.[6]

6   F.      Ineffective Assistance Counsel - Failure to Call Key Witnesses

7            Petitioner contends that trial counsel was ineffective for failing to call key witnesses to

8   the actual crime. Specifically, Petitioner contends that counsel should have called witness Jose

9   Ariza who purportedly would have described the perpetrators as two Hispanic males. (Amd.

10  Petition, at 5.) As Respondent concedes, this claim is exhausted as it was raised in a petition

11  filed in the state's highest court. (Lodged Doc. No. 11, at 25-29.) However, Respondent argues

12  that this claim is time-barred as it was not presented to the Court within AEDPA's one-year

13  statute of limitations.

14           As explained, *supra*, a claim in an amended petition does not relate back to a claim in a

15  previously filed petition unless it arises from "a common 'core of operative facts' uniting the

16  original and newly asserted claims." Felix, 545 U.S. at 659. The claim cannot arise from

17  "events separate in 'both time and type' from the originally raised episode." Id. at 657.

18           As previously stated, the only ineffective assistance of counsel claims raised in the

19  original, timely petition related to the failure to object to hearsay testimony and failure to request

20  discovery of the gun. (Petition, at 5.) The claim concerning the failure to object to hearsay

21  testimony appeared to connected to the testimony of Detective Guzman. In the supporting facts

22  section for that claim, Petitioner stated:

23                  Detective on the witness stand offered up hearsay evidence without
                    objection by defense counsel [T.C. hereafter] failed to call key witness to the
24                  actual crime scene and make an investigation or even prepare to try case for trial;

25  _____

26           [6] Petitioner additionally presented this claim to the California Supreme Court in a petition for writ of
     habeas corpus filed on December 5, 2003. (See Lodged Doc. No. 11.) The petition was denied without citation or
27   comment on July 27, 2005. (See Lodged Doc. No. 14.) The silent denial creates the presumption that the state's
     highest court did not intend to change the last reasoned decision found in the opinion of the state intermediate
28   appellate court. Ylst v. Nunnemaker, 501 U.S. at 803.

failed to present an expert eyewitness in identification in which Petitioner is entitled to a conflict free attorney.

(Petition, at 5.)  As Respondent submits, the witness is not identified nor was the subject matter of the witness's testimony identified.  The claims raised in the supporting facts section of the petition are merely conclusory allegations unsupported by identifiable facts.  Similarly, the other claim that counsel was ineffective for failing to request discovery of the gun does not allege facts related to the instant ineffectiveness claim.  (Petition, at 5; see section C, *supra*.)

Although in the "supporting facts" section of the original petition, Petitioner did state vaguely that counsel failed to call key witnesses to the actual crime, it was in relation to his bigger claim that counsel was ineffective for failing to object to hearsay evidence.  As such, this claim does not relate back to the claims in the original petition that his attorney failed to object to hearsay evidence and failed to request discovery of the gun.  "[A] petitioner does not satisfy the Rule 15 'relation back' standard merely by raising some type of ineffective assistance claim based upon an entirely distinct type of attorney misfeasance."  United States v. Ciampi, 419 F.3d 20, 24 (1st Cir. 2005).  The failure to call a witness during the presentation of the defense is different in time and type of error than a failure to object to the prosecution evidence or the failure to request discovery from the prosecution.

Case authority supports the position that ineffective assistance of counsel claims that arise from a different occurrent in both time and type do not provide sufficient notice of an unrelated theory of ineffective assistance.  See e.g. United States v. Craycraft, 167 F.3d 451, 457 (8th Cir. 1999); Davenport v. United States, 217 F.3d 1341, 1346 (11th Cir. 2000).

In any event, even if the claim relates back to the original petition, it is without merit.  In presenting a claim of ineffective assistance based on counsel's failure to call witnesses, Petitioner must identify the witness, U.S. v. Murray, 751 F.2d 1528, 1535 (9th Cir. 1985), show that the witness was willing to testify, U.S. v. Harden, 846 F.2d 1229, 1231-32 (9th Cir. 1988), and show that the witness's testimony would have been sufficient to create a reasonable doubt as to guilt.  Tinsley v. Borg, 895 F.2d 520, 532 (9th Cir. 1990); see also United States v. Berry, 814 F.2d 1406, 1409 (9th Cir. 1989) (holding that where defendant did not indicate what witness

1   would have testified to and how such testimony would have changed the outcome of the trial,

2   there can be no ineffective assistance of counsel).  The absence of affidavits from uncalled

3   witnesses puts a petitioner's claim at a disadvantage.  Howard v. O'Sullivan, 185 F.3d 721, 724

4   (7th Cir. 1999) ("failure to submit supporting affidavits from [the] potential witnesses would

5   severely hobble [the petitioner's] case.")

6        Here, although Petitioner identifies the witness as Jose Ariza and claims that he would

7   have described the perpetrators as two Hispanic males, Petitioner fails to demonstrate that this

8   witness would have in fact been willing to testify and the absence of an affidavit from Mr. Ariza

9   greatly diminishes his claim.  Further, Petitioner has failed to demonstrate that this testimony

10  would have been sufficient to create a reasonable doubt as to his guilt, particularly given that

11  there was strong evidence supporting his conviction.  **(**See section C, *supra*.**)**

12  G.   Ineffective Assistance Counsel - Failure Present Expert on Eyewitness Identification

13       Petitioner claims that trial counsel was ineffective for failing to present an expert on

14  eyewitness identification.  Specifically, Petitioner contends that because identification was the

15  primary question at trial, and the eyewitness was in the country for only eight months before the

16  crime, an expert on eyewitness identification was critical to show Petitioner was mistakenly

17  identified.  (Amd. Petition, at 8.)  Respondent concedes that this claim was exhausted in the state

18  court.  (Lodged Doc. NO. 11, at 30-36.)  However, Respondent contends that the claim is time-

19  barred by AEDPA's one-year statute of limitations.

20       A claim in an amended petition does not relate back to a claim in a previously filed

21  petition unless it arises from "a common 'core of operative facts' uniting the original and newly

22  asserted claims."  Felix, 545 U.S. at 659.  The claim cannot arise from "events separate in 'both

23  time and type' from the originally raised episode."  Id. at 657.

24       Again, the only ineffective assistance of counsel claims raised in the original, timely

25  petition concerned counsel's failure to object to hearsay testimony and the failure to request

26  discovery of the gun.  (Petition, at 5.)  Although under the "supporting facts" section of the

27  "failure to object to hearsay" claim, Petitioner stated that counsel failed to "present an expert

28  eyewitness in identification," this fact is unrelated to the underlying claim.  Petitioner did not

16

1    explain the purpose or content of the proposed expert testimony.  Therefore, this claim does not

2    relate back to the claims raised in the original petition that counsel was ineffective for failing to

3    object to hearsay evidence and failing to request discovery of the gun.  See United States v.

4    Ciampi, 419 F.3d at 24.  The failure to call an expert witness during the presentation of the

5    defense is different in time and type than the failure to object to the prosecution evidence or

6    failure to request discovery from the prosecution.

7           In any event, even if the claim relates back to the claim in the original petition, it is

8    without merit.  As stated in section F, *supra*, in order to succeed on a claim of ineffective

9    assistance of counsel for failing to call a particular witness, Petitioner must identify the witness,

10   U.S. v. Murray, 751 F.2d 1528, 1535 (9th Cir. 1985), show that the witness was willing to testify,

11   U.S. v. Harden, 846 F.2d 1229, 1231-32 (9th Cir. 1988), and show that the witness's testimony

12   would have been sufficient to create a reasonable doubt as to guilt.  Tinsley v. Borg, 895 F.2d

13   520, 532 (9th Cir. 1990); see also United States v. Berry, 814 F.2d 1406, 1409 (9th Cir. 1989)

14   (holding that where defendant did not indicate what witness would have testified to and how

15   such testimony would have changed the outcome of the trial, there can be no ineffective

16   assistance of counsel).  Speculation about what an expert could have said is not enough to

17   establish prejudice.  Grisby v. Blodgett, 130 F.3d 365, 373 (9th Cir. 1997).

18          Petitioner has failed to failed to identify the expert witness, show that the witness was

19   willing to testify, or that the expert witness's testimony would have been sufficient to create a

20   reasonable doubt as to his guilt.  As such, Petitioner has not demonstrated that counsel was

21   ineffective or that he was prejudiced as a result, and his claim fails on the merits.

22   H.    Ineffective Assistance Counsel Claim - Failure to Object to Eyewitness Identification

23          Petitioner contends that his attorney failed to make a timely objection to witness

24   Macedo's identification of Petitioner as the shooter.  (Amd. Petition, at 8.)

25          The California Supreme Court denied the claim without comment.  (Lodged Doc. No. 8.)

26   Petitioner raised this claim on direct review to the Fifth District Court of Appeal.  The Court of

27   Appeal denied the claim on the merits in a reasoned decision.  (Lodged Doc. No. 7.)

28          As with the preceding two claims, the instant ineffective assistance of counsel claim does

17

not relate back to the claims presented in the original, timely petition.  More specifically, the

instant claim that counsel was ineffective for failing to object to the identification does not arise

from the same facts as the ineffectiveness claims arising from failure to make a hearsay objection

or to request discovery.  See Felix, 545 U.S. at 657, 659.

 In any event, as Respondent submits, the claim is without merit.  In denying the claim on

direct review, the Court of Appeal independently reviewed the photographic lineup and found

that the identification was reliable, and defense counsel did not err in failing to object to the

identification.  (Lodged Doc. No. 7, at 7-23.)  Specifically, the Court of Appeal found that

although the line-up may have been suggestive, after reviewing the totality of the circumstances,

it was independently reliable.  (Id. at 18-21.)  Petitioner has simply failed to demonstrate that the

state courts' determination of this issue was contrary to, or an unreasonable application of,

clearly established Supreme Court precedent, nor does this Court find so.  Accordingly,

Petitioner's claim must be denied.

I.      Ineffective Assistance Counsel - Failure to Object to Testimony Concerning Lighting
        Conditions

        Petitioner contends that counsel was ineffective by failing to object to testimony

concerning the lighting conditions.  (Amd. Petition, at 9.)  Respondent concedes that this claim

was exhausted in direct review in the state court.  However, Respondent argues that the claim is

time-barred.  The Court agrees.

        This claim was not presented to this Court in Petitioner's original, timely petition.

Therefore, the claim must be summarily dismissed because there were no operative facts related

to this claim presented in the petition received by this Court on October 3, 2005.  Felix, 545 U.S.

at 659.   Accordingly, this claim is barred by the statute of limitations.

J.      Ineffective Assistance Counsel - Failure to Object to Prosecutor's Closing Argument

        Petitioner contends that trial counsel was ineffective for failing to object when the

prosecutor "vouched" for two of the key witnesses during closing argument.  (Amd. Petition, at

9.)  As Respondent concedes, this claim was exhausted in the petition filed in the California

Supreme Court, which was summarily denied.  (Lodged Doc. 11, at 42-47; Lodged Doc. No. 14.)

As Respondent submits, this claim is also barred by the statute of limitations as it does not relate back to the two claims raised in the original, timely petition.  Felix, 545 U.S. at 657, 659.  Although in the "supporting facts" section of the original petition, Petitioner stated: "[counsel] failed tin making timely objection to the prosecution's statement during closing arguments as the prosecutor 'vouched' for two of its witnesses[,]" the facts were raised under the heading of the bigger claim that counsel failed to request the discovery of the gun.  (*See* Petition, at 5.)

In any event, even if the claim is treated as having been raised in the original, timely petition, as Respondent correctly argues, the claim is without merit.  The state court's silent denial constitutes an adjudication on the merits entitled to deference under the AEDPA.  Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000).  Applying the Strickland standard as outlined under section C, *supra*, Petitioner's claim is nothing more than a vague and conclusory allegation devoid of factual support.  Jones v. Gomez, 66 F.3d 199, 204-05 (9th Cir.1995) (holding that conclusory allegations made with no reference to the record or any document do not merit habeas relief).  Petitioner has provided no basis for the Court to determine the reasonableness of counsel's conduct, let alone any resulting prejudice, and his claim therefore fails under Strickland, 466 U.S. at 697.

K.     Ineffective Assistance Counsel - Failure to Investigate Crime

Petitioner contends that counsel did not adequately investigate the crime in preparation for trial.  (Amd. Petition, at 10.)  Petitioner exhausted this claim in the petition for writ of habeas corpus submitted to the California Supreme Court.  (Lodged Doc. No. 11, at 53-57; Lodged Doc. No. 14.)  Respondent submits this claim is barred by the statute of limitations because it was not identified as a separate claim in the original, timely petition.  Although in the "supporting facts" section of the original petition, Petitioner stated: "[counsel] failed to make an investigation or even prepare the case for trial . . . ." (Petition, at 5.)  These facts were presented under the claim that counsel was ineffective for failing to object to the detective's "testimony regarding interview, hearsay statements and petitioner's involvement."  (Id.)  As such, the claim was not presented as a separate and distinct claim of ineffective assistance, and failed to provide proper

19

notice of the facts supporting such claim.

In any event, even if the claim relates to the original petition, the claim is meritless.  As with the previous claim, applying the <u>Strickland</u> standard as outlined under section C, *supra*, Petitioner's claim is nothing more than a vague and conclusory allegation devoid of factual support.  <u>Jones v. Gomez</u>, 66 F.3d 199, 204-05 (9th Cir.1995) (holding that conclusory allegations made with no reference to the record or any document do not merit habeas relief). Petitioner has provided no basis for the Court to determine the reasonableness of counsel's conduct, let alone any resulting prejudice, and his claim therefore fails under <u>Strickland</u>, 466 U.S. at 697.

M.    <u>Petitioner's Absence From Court During Read Back of Testimony</u>

Petitioner argues that his right to be present at all critical stages of his trial was denied when he was not present during the court reporter's read back of testimony to the jury. (Amd. Petition, at 10.)  This claim was exhausted in the state court. (Lodged Doc. No. 8, at 18.) However, as Respondent correctly argues, this claim is barred by the statute of limitations as it does not relate back to the original, timely petition.

In order to succeed on this claim, Petitioner would have to show that his presence was required to insure fairness of the proceedings.  <u>United States v. Gagnon</u>, 470 U.S. 522, 526-527 (1985).  As Respondent argues, any facts supporting this claim would have occurred after the close of the evidence; however, none of the claims presented in the original petition arise from facts occurring after the close of the evidence.  (*See* Petition, at 5-6.)  Accordingly, the factual basis for this claim is different in both time and type from the claims raised in the original petition, and the claim does not relate back to the original petition.  <u>Felix</u>, 545 U.S. at 659.

N.    <u>Insufficient Evidence to Support Conviction</u>

Petitioner contends that his conviction was not supported by sufficient evidence. (Amd. Petition, at 11.)  This claim was exhausted in direct review in the state court. (Lodged Doc. No. 8, at 17.)  However, as Respondent correctly argues this claims must be dismissed because it is time-barred.

This claim was not presented to this Court in Petitioner's original, timely petition.  In order to succeed on this claim, Petitioner must show that after viewing the evidence and the

inferences to be drawn from it in the light most favorable to the prosecution, no reasonable jury could find the essential elements of the crime beyond a reasonable doubt. <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979). As Respondent submits, the claims presented in the timely petition concern discrete pieces of evidence that he claims should or should not have been presented at trial. (Petition, at 5-6.) The factual circumstances for those claims did not relate to the sufficiency of the evidence to support his conviction. More specifically, whether the facts presented at trial were sufficient to prove the elements of robbery and felony murder. The facts necessary to support this claim differ in both time and type from the facts concerning the ineffective assistance of counsel claims raised in his original petition. Accordingly, this claim does not relate back to the original timely petition. <u>Felix</u>, 545 U.S. at 657, 659. In any event, as discussed *supra*, there was substantial evidence of Petitioner's guilt, and there is no merit to Petitioner's claim.

O.    <u>Improper Questioning of Petitioner's Sister</u>

Petitioner contends that the techniques employed by the detective who questioned his eleven-year-old sister rendered her statements inadmissible. (Amd. Petition, at 11.) This claim was exhausted in the state court in a post-conviction collateral petition. (Lodged Doc. No. 11, at 12-21.) However, as Respondent argues, this claim is barred by the statute of limitations. In any event, the claim is meritless.

This claim was not presented to this Court in Petitioner's original, timely petition. As explained below, the operative facts related to this claim were not included in the original petition filed with this Court on October 3, 2005.

First, Petitioner cannot assert the claim that his sister was illegally detained, as he is attempting to assert a violation of her Fourth Amendment rights. <u>See</u> <u>Rakas v. Illinois</u>, 439 U.S. 128, 133-134 (1978). Petitioner additionally claims that his "Federal Constitutional rights to a fair trial and due process" were violated by the detective's questioning of the third party. The focus of the facts relating to this claim would involve the testimony given by Detective Guzman as to the contents of the interview with Petitioner's sister, Courtney Ferreti. The original timely petition did not discuss this evidence, ad it only discussed the Detective's testimony concerning

"hearsay." (Petition, at 6.) As such, the factual basis supporting this claim is different in both time and type from the claims raised in the original petition, and the claim does not relate back to the timely petition. Felix, 545 U.S. at 657, 659.

In any event, even if the claim is identical to or related to the issue presented in ground two of the original timely petition, the claim is without merit. There is simply no evidence that trial counsel was ineffective for failing to make a hearsay objection to the detective's testimony concerning the interview with Courtney Ferreti. Ferreti testified at Petitioner's trial and was subject to cross-examination concerning the statements made during her interview. Accordingly, Petitioner's Sixth Amendment right to confront this witness was adequately protected. See Crawford v. Washington, 541 U.S. 36, 39 (2004). Therefore, any objection by counsel would have been futile and counsel could not have been ineffective for failing to raise a meritless objection. Moreover, Petitioner has failed to establish any resulting prejudice. The state courts' determination of this issue was not contrary to, or an unreasonable application of Strickland.

P.    Ineffective Assistance Counsel During Closing Argument

Petitioner contends that his trial counsel was ineffective for making an improper closing argument. (Amd. Petition, at 12.) This claim was exhausted in state collateral review. (Lodged Doc. No. 11, at 36-42.) However, this claim is time-barred as it was not presented in the timely petition and does not relate back to the claims raised therein.

More specifically, the factual basis for this claim entails facts related to defense counsel's closing argument. However, no facts concerning counsel's closing argument were included in the timely petition. As such, this claim is different in both time and type from the claims presented in the original petition and it does not relate back. Felix, 545 U.S. at 657, 659.

Q.    Additional Claim Raised in Traverse

In his traverse, Petitioner seeks to raise an additional claim for relief. Petitioner contends that his counsel was further ineffective for failing to object the hearsay statements made by the anonymous informants. (Traverse, at 7.) Petitioner states that "in his haste to file the amended petition [he] mistakenly failed to include this ground . . ." (Id.) Respondent objects to Petitioner's attempt to incorporate another claim, as an answer has already been filed. The Court

1   agrees.

2          Under Rule 15(a), a party may amend a pleading once as a matter of course at any time

3   before a responsive pleading has been served.  Otherwise, a party may amend a pleading only by

4   leave of court or by written consent of the opposing party.  See In re Morris, 363 F.3d 891, 894

5   (9th Cir. 2004).  Initially, Petitioner has not sought, and Respondent has not consented to

6   Petitioner's attempt to amend the petition.

7          In any event, as Respondent submits, Ground Three of the amended petition alleges

8   essentially the same facts in support of his new claim: "During direct examination the prosecutor

9   asked Detective if he received anonymous tip information two days after the shooting.  After an

10  affirmative response the prosecutor asked for details, trial counsel interposed a hearsay objection

11  in which the court overruled."  (Amd. Petition, at 6.)  Yet, Petitioner now seeks to claim that his

12  trial counsel was ineffective for failing to object to the hearsay statements made by the

13  anonymous informants.  (Traverse, at 8.)  To the extent Petitioner is attempting to claim that the

14  trial court erred in not sustaining the objection, this claim was previously raised and considered

15  herein.  Accordingly, Petitioner's attempt to add Ground Fifteen to the amended petition should

16  be denied.

17                                  RECOMMENDATION

18         Based on the foregoing, it is HEREBY RECOMMENDED that:

19         1.     The instant petition for writ of habeas corpus be DENIED; and

20         2.     The Clerk of Court be directed to enter judgment in favor of Respondent.

21         This Findings and Recommendation is submitted to the assigned United States District

22  Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 72-304 of

23  the Local Rules of Practice for the United States District Court, Eastern District of California.

24  Within thirty (30) days after being served with a copy, any party may file written objections with

25  the court and serve a copy on all parties.  Such a document should be captioned "Objections to

26  Magistrate Judge's Findings and Recommendations."  Replies to the objections shall be served

27  and filed within ten (10) court days (plus three days if served by mail) after service of the

28  objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. §

636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

     IT IS SO ORDERED.

**Dated:**   **November 19, 2007**               **/s/ Dennis L. Beck**
                                               UNITED STATES MAGISTRATE JUDGE